UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN PETERS,	Civil Action No. 14-14229

    Plaintiff,

    v.	HON. R. STEVEN WHALEN
       U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Plaintiff Brian Peters ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #12] is GRANTED and Plaintiff's Motion for Summary Judgment [Dock. #11] is DENIED.

### I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on July 9, 2012, alleging disability as of December 1, 2009 (Tr. 168, 170). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on March 25, 2013 in Mount Pleasant, Michigan before Administrative Law

Judge ("ALJ") JoErin O'Leary (Tr. 34). Plaintiff, represented by attorney Garrett Ten-Have Chapman, testified (Tr. 40-75), as did vocational expert ("VE") Toni McFarlane (Tr. 75-86). On May 16, 2013, ALJ O'Leary found Plaintiff not disabled (Tr. 19-29).

On September 15, 2014, the Appeals Council denied review of the administrative opinion (Tr. 1-5). Plaintiff filed suit in this Court on October 3, 2014.

## II.  BACKGROUND FACTS

Plaintiff, born November 15, 1973, was 39 at the time of administrative decision (Tr. 29, 168). He completed 12th grade and worked previously as a machine operator and truck driver (Tr. 202). He alleges disability resulting from a right shoulder injury, diabetes, left foot problems, and hypertension (Tr. 201).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived with his father due to his inability to pay the heating bill at his own house (Tr. 41). His own house was scheduled for foreclosure sale (Tr. 41). He was single with no minor children (Tr. 41). He graduated from high school and received a certification after attending truck-driving school (Tr. 42). He worked as a machine operator until 2005 but after being laid off, worked as a truck driver (Tr. 42). The machine operator job required lifting up to 40 pounds (Tr. 43).

Plaintiff fractured his left foot soon after beginning work as a truck driver (Tr. 43). The truck-driving work required him to "hook the trailer up, check the tires, [perform] minor

maintenance . . . [and] change fuel filters" (Tr. 44). In December, 2009, he injured his right shoulder while working (Tr. 45). He had a Workers' Compensation claim pending for the shoulder problems (Tr. 45).

Plaintiff had not worked for wages since December, 2009 but had performed volunteer work at the Salvation Army to guarantee that he received Workers' Compensation wages (Tr. 46-47). On average, he worked around 20 hours a week at the Salvation Army (Tr. 70). He failed to show up to work approximately one day each week due to pain or sleep disturbances (Tr. 70-71). Subsequent to December, 2009, he experienced significant left foot pain and had been told by doctors that the previous fracture had not healed correctly (Tr. 47). The condition of diabetes was generally controlled with medication but bouts of high blood sugar caused shakiness and sweating, and low blood sugar resultedj in the feeling of being "drunk" (Tr. 48). He experienced blood sugar fluctuations two to three times a month (Tr. 49). He treated the high blood sugar with medication and ate candy to combat low blood sugar (Tr. 49). He required 30 to 60 minutes to recover from blood sugar fluctuations (Tr. 49). Diabetes medication caused the side effect of diarrhea occurring up to 20 times a day two to three times a week (Tr. 49-50). Bathroom breaks for diarrhea lasted up to 45 minutes (Tr. 50).

Plaintiff also experienced lower back pain as a result of several herniated discs but had not received treatment for the condition since 2005 (Tr. 50-51). He coped with low back pain by taking Tylenol (Tr. 51). Both sitting and walking caused right leg numbness (Tr. 52).

Depending on the day, Plaintiff was able to walk between 30 and 200 feet (Tr. 53). Two surgeries had not improved the right shoulder condition and he now experienced left shoulder pain from overuse (Tr. 53). He was unable to reach overhead on the right or lift more than 15 pounds (Tr. 53-54, 61). The right shoulder pain caused concentrational problems (Tr. 57). On a scale of one to ten, Plaintiff experienced level "three to four" pain chronically and "eight, nine" after carrying even 10 pounds (Tr. 58). He iced the arm and took Tylenol approximately twice a day (Tr. 59). He performed most reaching with his left hand (Tr. 59). The shoulder problems caused sleep disturbances (Tr. 63-64). The left foot condition prevented him from standing for more than 30 minutes at a time (Tr. 60).

On a typical day Plaintiff arose at 8:00 or 9:00 a.m. and ate a meal that his sister had cooked (Tr. 64). He relied on his father and sister to perform household and yard chores (Tr. 64). He drove three to four times a week and was able to shop for groceries (Tr. 65). He was unable to perform even simple full-time work due to shoulder and foot pain (Tr. 67). He denied blurry vision, ulcerations, or any other complications of diabetes (Tr. 69).

### B. Medical Records

#### 1. Treating Sources

April, 2008 treating records note that Plaintiff denied significant pain from a 2006 left foot injury but reported recent "light swelling" and "occasional discomfort" (Tr. 358). An x-ray showed "nonunion junction" at the fifth metatarsal (Tr. 358-359). Plaintiff was advised that he would require surgery for bone healing, but opted out because the condition

was mostly asymptomatic (Tr. 358).

January, 2010 treating notes by Brock Horsley, M.D. state that Plaintiff's blood sugar levels were in the 120 to 140 range after having run out of medication the previous month (Tr. 269). The following month, an MRI of the right shoulder showed a labral tear (Tr. 329). June, 2010 x-rays of the the right shoulder were negative for fractures or dislocations (Tr. 231). The same month, Plaintiff underwent a right shoulder arthroscopy to repair the labral tear (Tr. 305).

September, 2010 records by Dr. Horsley state that Plaintiff did not follow through on recommendations to exercise or modify his diet and that the condition of diabetes was "deteriorating" (Tr. 272, 342). A November, 2010 MRI of the right shoulder showed mild degenerative changes and mild to moderate tendinopathy (Tr. 237, 298). Timothy A. Berka, M.D. noted that the study did not show a "complete" rotator cuff tear, but that the results were compromised by Plaintiff's "large size" (Tr. 238, 328-329). The same month, Dr. Horsley noted that Plaintiff had failed a recent work physical due to obesity (Tr. 274). He found that Plaintiff's postural limitations would not preclude work as a truck driver (Tr. 303). In June, 2011, surgeon Joseph R. Yacisen, D.O. noted Plaintiff's report of continued shoulder pain (Tr. 296). The same month, Plaintiff underwent right shoulder arthroscopy with a diagnosis of a "full thickness tear" rotator cuff tear (Tr. 235-236). Dr. Horsley's treating notes from the following month state that Plaintiff did not experience current shoulder pain (Tr. 265). November, 2011 physical therapy records state that Plaintiff experienced level

"2 to 3" right shoulder pain after undergoing 10 sessions of therapy (Tr. 240). Plaintiff reported that he was able to sleep three to four hours a night, which was an improvement of the two to three hours he reported before therapy (Tr. 240). He demonstrated good muscle strength but reported that he needed to ice the shoulder approximately twice a day (Tr. 240). He demonstrated grip strength of 118 and 92 pounds on the left and right respectively (Tr. 241). His rehabilitation potential was deemed "good" (Tr. 242).

In June, 2012, Dr. Horsley completed a physical capacities evaluation, noting a "poor" prognosis for the right shoulder due to adhesive capsulititis (Tr. 280). He found that the physical limitations would cause concentrational problems "often" (Tr. 280). He found that Plaintiff was limited to sitting for four hours in an eight-hour work day, standing for one hour, and walking for 30 minutes (Tr. 280). He found that Plaintiff was restricted to pushing and pulling with the right upper extremity to 10 percent of the time and left, 50 percent (Tr. 281). He found that Plaintiff was limited to lifting and carrying 20 pounds on an occasional basis (Tr. 281). He limited Plaintiff to occasional bending, squatting, crawling, and climbing, with a preclusion on overhead reaching (Tr. 282). He found "mild" restriction in driving and found that Plaintiff would require unscheduled work breaks (Tr. 282).

October, 2012 treating records note Plaintiff's report that the diabetes had been stable and asymptomatic (Tr. 336). January, 2013 treating records state that the diabetes numbers were "improving but not to goal" (Tr. 334). Plaintiff reported ongoing back pain (Tr. 331).

## 2. Non-Treating Sources

In February, 2012, Gregory M. Sassmannshausen, M.D. evaluated Plaintiff's shoulder condition relative to a Workers' Compensation claim, noting Plaintiff's report that he injured the shoulder on December 8, 2009 while releasing a lever on a truck (Tr. 251). Dr. Sassmannshausen noted that May, 2010 arthroscopy notes did not mention a rotator cuff tear (Tr. 251, 286). He noted that Plaintiff currently had 25-pound weight restrictions but 5/5 strength and a full range of elbow and wrist motion (Tr. 252-253). Dr. Sassmannshausen found a 12 percent "whole person impairment" (Tr. 254). He found that Plaintiff was capable of returning to work with restrictions of 25-pound lifting, no repetitive use of the right arm, waist level work only, and no pushing or pulling of more than 25 pounds with the right upper extremity (Tr. 255).

In September, 2012 Jerry Evan, M.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff could lift up to 20 pounds occasionally and 10 frequently; sit, stand, or walk for a total of six hours in an eight-hour work day; and push and pull without limitation (Tr. 92). Dr. Evans found that Plaintiff was limited to occasional stooping, kneeling, crawling and stair and ramp climbing; frequent balancing and crouching; and a preclusion on climbing of ladders, ropes, or scaffolds (Tr. 93). He found that Plaintiff experienced limitation in reaching overhead, in front, or laterally on the right (Tr. 93). He found that Plaintiff should avoid concentrated exposure to extreme heat, humidity, and hazards (Tr. 94).

### 3. Records Submitted After the May 16, 2013 Decision (Tr. 367-377)[1]

A December, 2009 MRI of the right shoulder showed a "normal appearance"of the rotator cuff (Tr. 371). A November, 2010 MRI of the right shoulder showed moderate rotator cuff tendinopathy (Tr. 369). October, 2012 testing showed a glucose level of 226 (Tr. 375). January, 2013 testing showed glucose levels of 200 (Tr. 376). April, 2013 testing showed a glucose level of 206 (Tr. 377).

### C. Vocational Testimony

VE McFarlane characterized Plaintiff's former work as an "over-the-road truck driver" as exertionally medium and semiskilled and work as an "autoclave operator," light and skilled[2] (Tr. 75-76).

The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

---

[1] These records were not among those considered by the ALJ. Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, Plaintiff does not cite these records in his argument for remand. Further, my own review indicates that none of the records would provide a basis for remand.

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> [T]his individual would be limited to light work, but there would be a lot of restrictions on that. In particular, the lifting and carrying required to light work could be performed with the left arm, but not with the right. Essentially, the use of the right arm would be limited to using that as a guide. They would not be able to perform any overhead reaching. They should not climb ladders or scaffolds. They should not crawl. And they would be limited to no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, or crouching. They should not work around unprotected heights, moving mechanical parts, and they should not be required to operate a motor vehicle. Likewise, they would have to avoid occupational vibration. And I think that due to chronic pain associated with the conditions, they would be limited to simple, routine tasks. With those restrictions, would there be any past work that such an individual could perform? (Tr. 76-77).

The VE responded that the limitations would preclude Plaintiff's past relevant work but would allow the above-described individual to perform the light, unskilled work of an information clerk (1,100 jobs in the regional economy); and host/hostess (300) (Tr. 80). The VE found that if Plaintiff were limited to sedentary work, he could perform the job of "call out operator" (500); and surveillance systems monitor (100) (Tr. 81). The VE testified that if the limitations did not include restrictions on keyboarding, the individual could additionally perform the sedentary work of a document preparer (2,100), and final assembler (1,300) (Tr. 82-83).

The VE testified that if the individual were limited to sitting for four hours in an eight-hour period, standing for one, and walking for only 30 minutes, all work would be precluded (Tr. 84). In response to questioning by Plaintiff's attorney, the VE testified that the need to miss more than one day of work each month due to sleep disturbances would preclude all competitive work (Tr. 85).

**D. The ALJ's Decision**

Citing the medical records, ALJ O'Leary found that Plaintiff experienced the severe impairments of "right shoulder adhesive capsulitis, obesity, bicipital tendinitis, diabetes mellitus, history of left foot fracture, [and] hypertension," but determined that none of the conditions met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> Lifting and carrying could be performed with the left arm, but not the right - essentially the use of the right arm would be limited to using that as a guide. He could never perform any overhead reaching. There would [be] no limitations on handling and fingering. He should not climb ladders or scaffolds or crawl; limited to no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling or crouching. He should not work around unprotected heights or moving mechanical parts and should not be required to operate a motor vehicle. He would have to avoid occupational vibration. Due to chronic pain associated with his condition, he would be limited to simple, routine tasks (Tr. 22-23).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could work as a document preparer, call out operator, or final assembler (Tr. 27-28).

The ALJ discounted Plaintiff's allegations of disability. In response to the allegations of disabling left foot problems, she noted that April, 2008 x-rays showed only mild abnormalities (Tr. 24). She cited treatment records indicating that Plaintiff did not experience significant left foot pain or limitation (Tr. 24). The ALJ also cited November, 2011 physical therapy notes stating that Plaintiff experienced reduced pain and better sleep

after undergoing therapy (Tr. 24). She noted that Plaintiff's blood sugar and blood pressure levels were controlled with medication (Tr. 24). The ALJ noted that Plaintiff did not require the use of a cane despite the condition of morbid obesity (Tr. 25). She observed that Plaintiff's treatment had been primarily conservative and that blood sugar fluctuations were due to non-compliance with medical advice to lose weight, control his diet, and exercise (Tr. 26). She noted that Plaintiff was able to to prepare simple meals, do laundry, mow the lawn, drive, shop, and care for a pet (Tr. 26). She accorded significant (but not controlling) weight to Drs. Horsley and Sassmannshausen's 2012 opinions (Tr. 26).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# V.  ANALYSIS

Plaintiff argues first that the ALJ erred by failing to adopt Dr. Horsley's June, 2012 findings regarding limitations in the ability to sit, stand, or walk. *Plaintiff's Brief,* 5-7, *Docket #11-1.* Plaintiff argues that the treating opinion was supported by Dr. Horsley's own findings, Dr. Sassmannshausen's observations, and the surgical records. *Id.* at 6-7.  In his second argument, he takes issue with the RFC for exertionally light work, faulting the ALJ "cobbling together" a combination of the opinions of Drs. Horsley, Sassmannshausen, and Evans rather than simply adopting Dr. Horsley's more restrictive assessment. *Id.* at 8-10. He contends that in composing the RFC, the ALJ did not consider his testimony that he experienced up to 20 bathroom breaks each day due to diarrhea. Third, Plaintiff argues that the ALJ relied on legal "boilerplate" in discounting his allegations of limitation. *Id.* at 10-14.

Because Plaintiff's first and third arguments are dispositive of the second, the Court considers the treating physician argument first, credibility second, and the RFC, third.

### A.  The Treating Physician Analysis

Plaintiff faults the ALJ for failing to adopt all of the limitations found in Dr. Horsley's June, 2012 assessment.  Specifically, he takes issue with the ALJ's statement that "no evidence" supported Dr. Horsley's finding of severe limitations in "sitting, standing, and walking." *Plaintiff's Brief* at 7 (*citing* Tr. 26).  Plaintiff argues that the findings of exertional limitation are supported by Dr. Horsley's own findings of right shoulder range of motion and pain; the clinical, surgical, and radiographic findings; Dr. Sassmannshausen's observations;

and the hearing testimony. *Id.*

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS,* 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544–546 (6th Cir.2004)(*citing* § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011). In explaining the reasons for giving less than controlling weight to a treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson,* at 544. "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart, at 376 (citing* SSR 96–2p, *5, 1996 WL 374188 (July 2, 1996).

However, contrary to Plaintiff's argument, the ALJ's partial rejection of Dr. Horsley's June, 2012 opinion is well supported and explained. The ALJ noted that at the time of the assessment, Dr. Horsley was no longer treating Plaintiff (Tr. 26). Dr. Horsley's June, 2012 post-treatment assessment stand at odds with his November, 2010 treating opinion (made prior to the end of the treating relationship) that Plaintiff's postural limitations would not

preclude work as a truck driver (Tr. 303). Further, the ALJ noted correctly that Dr. Horsley's opinion that Plaintiff was unable to sit for more than four hours a day, stand for one, and walk for only 30 minutes was unsupported by any of the treating records, which showed "essentially normal musculoskeletal and extremity physical exams" (Tr. 26, 280). While Plaintiff alleged significant left foot problems, he reported to a treating source that the condition was mostly asymptomatic (Tr. 358). The ALJ's rejection of Dr. Horsley's "sitting, standing, and walking" opinion is also supported by Dr. Sassmannshausen's conclusion that Plaintiff's restrictions were limited to a 25-pound lifting, no repetitive use of the right arm, waist level work only, and no pushing or pulling of more than 25 pounds with the right upper extremity (Tr. 255). Aside from Plaintiff's testimony, the transcript overwhelming supports the ALJ's rejection of Dr. Horsley's finding of disabling exertional limitations.

### B. The Credibility Determination

Plaintiff also faults the ALJ's determination that his claims were not credible, arguing that the ALJ's "boilerplate" finding is inadequately supported and explained. *Plaintiff's Brief* at 10-12 (*citing* Tr. 23). This argument is without merit. While Plaintiff is correct that the final paragraph of transcript page 23 contains "boilerplate" language stating that the record does not support the alleged limitations, it is followed by a three-and-a-half page discussion of the evidence supporting the credibility determination (Tr. 24-27).

In regard to the allegations of foot problems, the ALJ cited Plaintiff's statement that the condition did not cause pain or otherwise interfere with his job as a truck driver (Tr. 24).

He noted that in November, 2011, Plaintiff reported only "2-3" shoulder pain after completing a course of physical therapy (Tr. 34). The ALJ noted that Dr. Sassmannshausen found that while Plaintiff experienced some degree of right shoulder limitation, he could perform work that did not require heavy lifting (Tr. 24). The ALJ cited the finding that Plaintiff was able to "ambulate quite well without an assistive device" and had a "functional range of motion" (Tr. 25). He noted that neurological examinations had been unremarkable (Tr. 25). The ALJ also noted that Plaintiff's treatment had been conservative in nature since the June, 2011 surgery and that he was able to engage in a wide variety of activities including driving, shopping, mowing the lawn, and light household chores (Tr. 25-26).

Because the ALJ's credibility determination is thorough, well articulated, and substantively sound, it should remain undisturbed. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989)(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### C. The RFC

For the same reasons, the RFC crafted by the ALJ does not provide grounds for remand.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir.2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account"

*Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

First, Plaintiff's claim that the ALJ was required to include all of the limitations in Dr. Horsley's June, 2012 opinion is without merit. Having adequately explained her reasons for the partial rejection of Dr. Horsley's opinion, the ALJ was not required to include the discounted findings in the RFC. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC).

The RFC for a limited range of sedentary work is generously supported and articulated by the record as a whole (Tr. 22-23). The ALJ noted that while Drs. Sassmannshausen and Evan's assessments suggested a lesser degree of limitation, she accorded "significant weight" to Dr. Horsley's opinion of postural limitations and restrictions in driving in crafting the RFC for sedentary rather than light work (Tr. 26-27). Plaintiff faults the ALJ for failing to discuss or credit his claim that he experienced the diabetic medication side effect of diarrhea required up to 20 bathroom breaks each day lasting up to 45 minutes at a time. *Plaintiff's Brief* at 10 (*citing* Tr. 49-50). While the ALJ did not directly address this portion of Plaintiff's testimony, she discussed the records relating to the condition of diabetes at length, none of which mention a medication side effect causing frequent diarrhea, much less the need for 20

bathroom breaks on a regular basis (Tr. 24-25). While Plaintiff sought emergency treatment on occasion for conditions unrelated to the disability claim, at no time did he seek regular, urgent, or emergency treatment for the alleged side effect of almost constant diarrhea. The ALJ's neglect in specifically addressing the unsupported allegation of frequent, uncontrolled diarrhea does not provide grounds for remand. *See Griffith v. Commissioner of Social Sec.,* 2014 WL 1213257, *17 (E.D.Mich. February 14, 2014)(ALJ failure to address wholly unsupported claims of agoraphobia does not constitute harmful error); *Rabbers v. CSS*, 582 F.3d 647, 657 (6th Cir. 2009).

The decision to uphold the Commissioner's decision is not intended to trivialize Plaintiff's limitations or health conditions. Nonetheless, the ALJ's determination that he is not disabled from all gainful employment is within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [Docket #12] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #11] is DENIED.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated:  September 13, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 13, 2016, electronically and/or by U.S. mail.

>s/Carolyn M. Ciesla
>Case Manager to the
>Honorable R. Steven Whalen